# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 14-262 |
| | ) | Judge Nora Barry Fischer |
| RAMON COCA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I. INTRODUCTION

This matter is before the Court on a motion to suppress evidence filed by Defendant Ramon Coca, ("Defendant"), and the Government's opposition thereto. (Docket Nos. 87, 91, 95). The Court held a motion hearing on August 30, 2016, the official transcript of which has been filed of record and considered by the Court. (Docket Nos. 96, 99). Defendant subsequently filed a Post-Argument Brief in Support of Suppression, to which the Government has responded. (Docket Nos. 101, 102). After careful consideration of all of the parties' submissions and the credible evidence of record, and for the following reasons, Defendant's Motion to Suppress [87] is denied.

II. BACKGROUND

   *A. Facts[1]*

Defendant seeks to suppress evidence seized during a search of 600 3rd Avenue E, Beaver Falls, PA 15010-4836 on February 22, 2013. (Docket No. 87). Prior to Defendant's arrest, Robert Smith, a Special Agent of the Federal Bureau of Investigation, filed an Application and Affidavit for a Search Warrant on February 15, 2013. (*See United States v. 600 3rd Avenue*

---

[1] It is well-settled that, at a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Richardson*, 501 F.Supp.2d 724, 734 (W.D. Pa. 2007) (citations omitted).

*E*, No. 2:13-MJ-139-CRE-1, at Docket No. 4). In his Application and Affidavit for a Search Warrant, Special Agent Smith first provided an introduction that summarized his twenty-two years of employment with the Federal Bureau of Investigation, as well as his experience and training in investigating violations of 18 U.S.C. §§ 2251, 2252, and 2251A. (*Id.* at ¶¶ 1-7). Special Agent Smith next set forth a detailed background of the seizure of computers and computer storage devices; the processes related to retrieving data from computer systems; and the use of the Internet, computers, and computer storage devices to access and store child pornography. (*Id.* at ¶¶ 8-14).

In discussing probable cause, Special Agent Smith averred the following:

15. On March 1, 2012, an Australian citizen (AUCIT) was arrested by the Queensland Police Service (QPS) in regards to a child pornography (CP) investigation in which AUCIT utilized the e-mail account, miua2011@hotmail.com, to distribute child pornography. Pursuant to the arrest, the QPS obtained access to this e-mail account and observed over 600 emails sent between AUCIT and numerous other individuals; the majority of which appeared to contain child pornography or depict an interest in CP. Some of these emails also contained discussions among the users about having direct access to children.

16. The QPS then requested information from multiple e-mail providers, including Yahoo!, Google, and Hotmail. The results provided by these e-mail providers revealed that approximately 111 unique e-mail accounts appeared to have been accessed from within the United States.

17. In approximately July 2012, while serving a Temporary Duty Assignment with the Australian Federal Police and the QPS, [Special Agent Daniel E.] O'Donnell received electronic copies of correspondence sent between the approximate 111 United States based e-mail accounts and AUCIT.

18. Between July and September 2012, your Affiant reviewed the contents of the aforementioned e-mail accounts, which included the e-mail account hereafter referred to as "jesusweptone@gmail.com."[2]

19. Analysis of "jesusweptone@gmail.com" revealed e-mail conversation and multiple CP images sent from "jesusweptone@gmail.com" to "miua2011@hotmail.com" (AUCIT) during the approximate time period of

---

[2] In its Response to Defendant's Post-Argument Brief in Support of Suppression, the Government clarifies that paragraph 18 should have stated "Special Agent O'Donnell" rather than "your Affiant." (Docket No. 102 at 6 n.1).

November 2011.

20. Due to the above, [Special Agent] O'Donnell executed a search warrant on the appropriate E-Mail Provider in regards to "jesusweptone@gmail.com".

21. Pursuant to the aforementioned search warrant, the E-mail Provider of "jesusweptone@gmail.com" provided all available content associated with "jesusweptone@gmail.com". Among other things, a review of this content revealed the following:

> a. Numerous e-mails were sent between "jesusweptone@gmail.com" and other e-mail accounts between November 2011 and September 2012.
>
> b. One of these accounts was identified as roblowe6969@yahoo.com.

(*Id.* at ¶¶ 15-21). In reviewing his investigation of "roblowe6969@yahoo.com," Special Agent Smith stated the following:

22. Between 03/06/2012 and 06/30/2012, approximately 67 e-mails were sent between "jesusweptone@gmail.com" and "roblowe6969@yahoo.com". Many of these e-mails included attachments that contained CP and/or child erotica or contained text indicative of an interest in CP. Examples of these e-mails are as follows[.]

23. On 03/12/2012, the user of the e-mail account "roblowe6969@yahoo.com" sent an e-mail to "jesusweptone@gmail.com" stating "do u have any toddler boys? Or babies?" A few hours after this e-mail was sent, "jesusweptone@gmail.com" sent an e-mail to "roblowe6969@yahoo.com" which contained 53 images. The majority of these images contained CP and/or child erotica depicting toddlers and infants. Examples of these images are as follows:

> a. File: "2e6a710024532929lg.jpg" depicts an image of a lower torso of a male toddler 2 years of age or younger being anally penetrated by an adult penis.
>
> b. File: "boy_1.jpg" depicts an image of a male baby approximately one year old or less with an adult penis in his mouth.
>
> c. File: "1626045.jpg" depicts a male toddler 2 years of age or younger in bondage tied naked spread eagle.

24. On 03/20/2012, the user of "roblowe6969@yahoo.com" sent an e-mail to

3

"jesusweptone@gmail.com" stating (among other things), ". . . do you have any rape? like some of them being fucked and crying? or bestiality? thanks in advance". Attached to the e-mail were three videos. Two of the three videos contained CP depicting the anal or oral penetration of prepubescent or early pubescent males. A description of these videos are as follows:

   a. File: "Boy 11 dildo.wmv" depicts a prepubescent male, approximately 11 years of age, being anally penetrated with a dildo.

   b. File: "unknown_8_2_.3gp" depicts two Asian prepubescent males, approximately 10 or 11 years of age, engaging in masturbation then performing oral sex on an adult male and then depicts one of the prepubescent males being anally penetrated by an adult male.

25. On 03/29/2012, the user of roblowe6969@yahoo.com sent an e-mail to "jesusweptone@gmail.com", stating (among other things), ". . . I like all boys, and I prefer them to be real young, from 1 to 12 but I like older as well. However I enjoy watching the shocking things. Like rape and being punished by an older male. I enjoy watching them being fucked by a father or an older brother (i love incest) . . . ." Attached to the e-mail were four videos. All four videos contained CP depicting prepubescent or early pubescent males. Examples of these images are as follows:

   a. File: "young and wet teen boy.wmv" depicts a prepubescent male masturbating to ejaculation.

   b. File: "10 young boys cumming_gay preteen_NOBULL_parade of young jerkers and cummers (pthc pedo masturbation)2.09.mpg" depicts a prepubescent male masturbating to ejaculation.

   c. File: "Sexo Mikael suck boy (tied up – sucks man)_mpeg4.mp4" depicts a prepubescent male partially tied to a chair performing oral sex on an adult male.

26. In total, approximately 643 image and video files were sent between these two users. The majority of these files contained CP depicting the anal, vaginal, or oral penetration of prepubescent females, males, toddlers, and infants.

27. A review of the source header details associated with e-mails sent by "roblowe6969@yahoo.com" revealed they were sent from Internet Protocol (IP) address: 24.23.101.21.

28. An administrative subpoena issued to Comcast in regards to IP address 24.23.101.21 identified Ramon Coca, 600 3rd Avenue E, Beaver Falls, PA 15010-4836 as the account holder.

29. An administrative subpoena was then issued to Yahoo in regards to the e-mail account "roblowe6969@yahoo.com". A review of the results revealed the account was created on 03/05/2012 from IP address 24.23.101.21 (the same IP address as above). Further, a review of recent logins to the account, from 09/18/2012 through 10/11/2012, revealed they were also made from IP address 24.23.101.21. The account was then deactivated on 10/11/2012.

30. A check of publicly available databases identified Ramon Coca, DOB \*\*/\*\*/1989, SSAN \*\*\*-\*\*-5397, as residing at 600 3rd Avenue E, Beaver Falls, PA 15010-4836. Additional possible residents were identified as Bruce Murray, DOB unknown; Cori Bressack, DOB \*\*/\*\*/1989; and Nicole Dailey, DOB \*\*/\*\*/1988.

31. An inquiry made of the US Postal Service confirmed that as of 01/30/2013, Ramon Antonio Coca was receiving mail at 600 3rd Avenue E, Beaver Falls, PA 15010-4836.

32. On 02/07/2013, a physical surveillance of 600 3rd Avenue E, Beaver Falls, PA 15010-4836 was conducted. The residence is described as a two story wooden structure having tan siding on the first floor exterior and white siding on the second floor exterior. The number 600 is affixed to a metal rod beside a wooden stairway leading up to the residence from 600 3rd Avenue E. (*See* Attachment A.)

(*Id.* at ¶¶ 22-32).

Following his averments of probable cause, Special Agent Smith detailed the characteristics common to individuals involved in receiving child pornography and who have a sexual interest in children and images of children. (*Id.* at ¶ 33(a)-(f)). Specifically, Special Agent Smith stated that such individuals maintain their collections that are in a hard copy or digital format in their homes or in another secure and private environment. (*Id.* at ¶ 33(c)-(d)). Special Agent Smith included two attachments to the Application and Affidavit for a Search Warrant. (*Id.* at 18-24). Attachment A provided a description of the residence located at 600 3rd Avenue E, Beaver Falls, PA 15010-4836, and Attachment B contained a description of all items

to be seized and searched from the residence. (*Id.*). On February 15, 2013, United States Magistrate Judge Cynthia Reed Eddy found that the Application and Affidavit for a Search Warrant established probable cause and ordered that the warrant be executed by March 1, 2013. (*Id.* at Docket No. 5). On February 22, 2013, two laptop computers, two tablets, two CDs, a thumb drive, a Duquesne Light bill, and a United States Postal Service Change of Address confirmation were seized from 600 3rd Avenue E, Beaver Falls, PA 15010-4836. (*Id.*)

*B. Relevant Procedure*

The Indictment in this matter was filed on November 18, 2014. (Docket No. 3). Defendant is charged at Count One of the Indictment with the distribution of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(2), from on or about March 20, 2012 to on or about March 29, 2012. (*Id.* at 1). At Count Two, Defendant is charged with the possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B), on or about February 22, 2013. (*Id.* at 2). The Indictment alleges that Defendant used computer equipment to commit these violations, and the Government seeks forfeiture of the following property: (1) one HP laptop computer, Serial Number 5CB1297H65; (2) one Dell Inspiron laptop computer, Service Tag 47XW1F!; (3) two CDs; and (4) one thirty-two gigabyte SanDisk thumb drive. (*Id.* at 3-4).

Defendant filed the instant motion to suppress and supporting brief on July 5, 2016, (Docket No. 87), to which the Government filed a response in opposition on July 19, 2016, (Docket No. 91). This Court held a motion hearing on August 30, 2016. (Docket Nos. 96, 99). In accordance with the Court's Order, (Docket No. 98), Defendant filed a Post-Argument Brief in Support of Suppression on November 1, 2016, (Docket No. 101), to which the Government

responded on November 9, 2016, (Docket No. 102).  As the matter has been fully briefed and argued, it is now ripe for disposition.

III.   DISCUSSION

   *A. Relevant Legal Principles*

Defendant contends that his Fourth Amendment rights were violated because the search warrant was not supported by probable cause.  (Docket No. 87 at 3).  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV.

As discussed above, the search warrant here, which authorized that search of 600 3rd Avenue E, Beaver Falls, PA 15010-4836, was obtained from Magistrate Judge Eddy.  (*600 3rd Avenue E*, No. 2:13-MJ-139-CRE-1, at Docket No. 5).  "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).  A trial court exercises "only a deferential review of the *initial* probable cause determination made by the magistrate." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236) (emphasis in original)).  "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (internal quotations omitted).  Still, "'the resolution of doubtful or marginal cases in this area

should be largely determined by the preference to be accorded to warrants.'" *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (internal quotations omitted).

A magistrate's role in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found." *Conley*, 4 F.3d at 1205. In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record." *Jones*, 994 F.2d at 1055. Stated otherwise, the District Court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. *United States v. Whitner*, 219 F.3d 289, 295-96 (3d Cir. 2000). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182. This includes "all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates*, 462 U.S. at 238. Further, "'probable cause is a fluid concept' that turns on 'the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.'" *Miknevich*, 638 F.3d at 182 (quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)). Proof beyond a reasonable doubt is not required. *Id*.

  B. *Analysis*

Defendant presents a series of arguments challenging the warrant in this case, all of which are opposed by the Government. The Court will separately address each of Defendant's

8

arguments, in turn.

1. <u>Staleness of the Warrant Application</u>

Defendant argues that the information contained in the affidavit about his use of the Yahoo account to possess and distribute child pornography was "stale," which he believes undermines the probable cause finding. (Docket No. 87 at 3-7; *see also* Docket Nos. 95 at 3-4, 101 at 14-16). Specifically, Defendant contends that child pornography was sent and received from the Yahoo account with an IP address associated with 600 3rd Avenue E "for a short period of time, beginning approximately one year prior to the search warrant application." (Docket No. 87 at 3). Defendant also emphasizes that the Yahoo account had been deactivated for months before the application was filed. (*Id.* at 5). In response, the Government argues that, in the context of child pornography offenses, an interval of approximately nine months between the Internet activity and the submission of the application does not render the application stale. (Docket No. 91 at 4-5; *see also* Docket No. 102 at 1).

As an initial matter, the Court notes that the cases to which Defendant cites in support of his staleness argument are inapplicable because they are non-binding and factually distinguishable from the instant case. (Docket No. 87 at 5 (citing *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015), *United States v. Prideaux-Wentz*, 543 F.3d 954 (7th Cir. 2008), and *United States v. Doan*, 245 Fed. Appx. 550 (7th Cir. 2007)). Within this Court's jurisdiction, the Court of Appeals for the Third Circuit has held:

> Age of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness . . . Rather, we must also examine the nature of the crime and the type of evidence.

*United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) (internal citations omitted). The Third Circuit has not adopted "bright line" rules delineating a length of time to determine

9

staleness. *Id.* at 435. However, it is well settled that "persons with an interest in child pornography tend to hoard their materials and retain them for a long time." *United States v. Vosburgh*, 602 F.3d 512, 528 (3d Cir. 2010). Therefore, "information concerning such crimes has a relatively long shelf life. It has not been, and should not be, quickly deemed stale." *Id.* at 529. In applying these standards, the Third Circuit determined that a four-month gap between attempts to access child pornography and the warrant application did not render the application stale. *Id.* at 529-30 (collecting cases from other jurisdictions with three-year, twenty-two month, eighteen-month, ten-month, and five-month gaps).

Indeed, the Third Circuit has routinely rejected staleness arguments in child pornography cases involving much longer periods of time between the offense conduct and the application for a search warrant than occurred in this case, including periods as long as three-and-a-half years. *See, e.g.*, *United States v. Prawdzik*, 484 F. App'x 717, 723 (3d Cir. 2012) (upholding affidavit for child pornography search based on information that was at least three years old); *United States v. Eberle*, 266 F. App'x 200, 205-06 (3d Cir. 2008) (same for three-and-a-half-year-old information); *Shields*, 458 F.3d at 279 n.7 (same for information that was nine months old); *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3rd Cir. 1993) (same for information that was between thirteen and fifteen months old). *See also United States v. Kofalt*, No. 2:11-CR-155, 2012 U.S. Dist. LEXIS 157349, at *21-22, 28-29 (W.D. Pa. Nov. 2, 2012) (concluding that "[t]he Affidavit supplied the magistrate with ample reasons to find [the minor child's] statements reliable and credible" and that "there [was] sufficient evidence in the Affidavit to establish that [the affiant] reasonably believed that child pornography could be found at Defendant's residence on his computer and other related equipment"), *aff'd*, No. 13-3258, 2016 U.S. App. LEXIS 15782 (3d Cir. Aug. 26, 2016); *United States v. Bogle*, No. 2:08-CR-335, 2009 U.S. Dist. LEXIS

33310, at *10 (W.D. Pa. Apr. 20, 2009) ("The court does not believe that the brief ten-month period between defendant's subscription to the Home Collection website and the execution of the search warrant rendered the information contained in the affidavit stale.").

Applying these principles to the instant matter, the Court finds that the information in the affidavit was not stale because a period of approximately nine months is insufficient to demonstrate staleness in the context of child pornography offenses. It is well settled that "staleness is not a matter of mechanically counting days." *Vosburgh*, 602 F.3d at 528 (citing *Zimmerman*, 277 F.3d at 434). Instead, the import of the date of the information must be assessed in context and through the totality of the information provided to the judicial officer. As discussed above, the Third Circuit has repeatedly recognized that "'collectors of child pornography often store their material and rarely discard it.'" *Id.* (quoting *Shields*, 458 F.3d at 279 n.7); *see also Harvey*, 2 F.3d at 1322-23 (rejecting staleness claim in part due because "pedophiles rarely, if ever, dispose of sexually explicit material"). In the warrant application, Special Agent Smith reiterated the well-settled principles that individuals who have a sexual interest in children or in images depicting the sexual exploitation of children maintain "hard copies" of their collections in "a safe, secure and private environment . . . for several years." (*600 3rd Avenue E*, No. 2:13-MJ-139-CRE-1, Docket No. 4 at ¶ 33). The evidence gathered showed that between March 6, 2012 and June 30, 2012, approximately sixty-seven e-mails containing 643 image and video files were sent between "jesusweptone@gmail.com" and "roblowe6969@yahoo.com." (*Id.* at ¶¶ 22, 26). While the e-mail exchanges ended on June 30, 2012, the "roblowe6969@yahoo.com" account was not deactivated until October 11, 2012, and logins to the account were made in September and October 2012 from the IP address 24.23.101.21. (*Id.* at ¶¶ 22, 29). There is no evidence to suggest that the IP address or

Defendant's Comcast account was terminated. (*See id.* at ¶ 28). Thus, in examining the totality of the circumstances, there was a substantial basis for Magistrate Judge Eddy to conclude that probable cause existed to believe that child pornography could be found at Defendant's residence on his computer and other related equipment.

2. <u>Special Agent Smith's Special Knowledge</u>

In his Post-Argument Brief in Support of Suppression, Defendant submits that the warrant application failed to demonstrate that Special Agent Smith had special knowledge of child pornography cases because it did not provide information regarding his prior investigative experience or his training in the field. (Docket No. 101 at 17-20). In response, the Government argues that Special Agent Smith used his training and experience to appropriately articulate what he knows and believes to be true regarding individuals who commit child pornography offenses. (Docket No. 102 at 9-10).

At the outset, the Court finds that Defendant's reliance upon *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011), a case which is factually distinguishable from the instant matter, is misplaced. In *John*, the Third Circuit concluded that a warrant application was insufficient because "the affidavit's 'indicia of probable cause' with respect to child pornography [was] completely empty." 654 F.3d at 418. Although the affidavit "provide[d] reason to believe that [the defendant] had committed sex crimes against his students on school property," the allegations "[were] not sufficient to establish — or even to hint at — probable cause as to the wholly separate crime of possessing child pornography." *Id.* at 419.

In the instant matter, Special Agent Smith summarized his twenty-two years of employment with the Federal Bureau of Investigation, as well as his experience and training in investigating violations of 18 U.S.C. §§ 2251, 2252, and 2251A. (*600 3rd Avenue E*, No. 2:13-

MJ-139-CRE-1, Docket No. 4 at ¶¶ 1-3, 12). Based upon his previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom he had discussions, Special Agent Smith described the characteristics common to individuals who have a sexual interest in children and who receive child pornography. (*Id.* at ¶¶ 1-3, 12, 33). The Court finds that these "collective experiences" provided a substantial basis to believe that an individual within Defendant's residence was a collector of child pornography. *See United States v. Hawkins*, No. 1:11-CR-61, 2014 U.S. Dist. LEXIS 175562, at *24 (W.D. Pa. Dec. 19, 2014) (finding that the "collective experiences" of the trooper's "training and experience as well as the training and experience of other officers with whom he had shared and discussed investigative experiences . . . provided a basis to believe that the collector of child pornography within defendant's residence would have access to the acquired collection through secured means located in the residence").

### 3. Sufficiency of the Warrant Application

Defendant next argues that the warrant and incorporated affidavit did not provide a sufficient nexus that evidence of criminal activity would be found at 600 3rd Avenue E, Beaver Falls, PA 15010-4836. (Docket No. 87 at 3-7). Specifically, Defendant asserts that there was no basis to infer that the user of the Yahoo account resided at 600 3rd Avenue E or that any device used to access the Yahoo account would be found there. (*Id.* at 3). Noting that the residence is located near a college campus and is often inhabited by college students, Defendant insists that the Yahoo account user was a temporary visitor who accessed the account from a laptop or mobile device. (*Id.* at 4-6). In his Post-Argument Brief in Support of Suppression, Defendant reiterates these arguments and further contends that the warrant application failed to establish that the IP address assignment was static over time because there was an insufficient link

13

between the IP address and the residence during the relevant time period. (Docket No. 101 at 7-10). Pointing out that many homes use unsecured wireless networks to share a single Internet connection between multiple devices, Defendant asserts that the warrant application failed to establish that Internet access was unavailable to people outside the residence. (*Id.* at 10-14).

In response, the Government delineates the portions of Special Agent Smith's statements in the warrant application that connected Defendant with the Yahoo user account and to 600 3rd Avenue E. (Docket No. 91 at 2-4). The Government argues that based upon these allegations, it is reasonable to infer that an individual who sent sixty-seven e-mails from the identified IP address resided at the location and was not merely a guest or visitor. (*Id.* at 4). In its Response to Defendant's Post-Argument Brief in Support of Suppression, the Government contends that the warrant application provided sufficient facts to support the reasonable inference that the IP address was assigned to Defendant because the IP address was used for the seven-month period that the roblowe6969 account was active. (Docket No. 102 at 5-7). The Government also asserts that the Court should reject Defendant's "what-if scenarios" because affidavits supporting search warrants are not required to disprove speculative factual scenarios that could undermine probable cause. (*Id.* at 7-9).

On balance, after examining the totality of the information provided in the warrant and affidavit, the Court finds that the information provided by Special Agent Smith, reviewed in a straightforward and non-technical manner, is more than sufficient to demonstrate probable cause that evidence of criminal activity by Defendant, i.e., the possession and distribution of material depicting the sexual exploitation of a minor, would be found during a search of 600 3rd Avenue E, Beaver Falls, PA 15010-4836. *See Gates*, 462 U.S. at 238-39. Defendant's contention that the warrant application failed to establish a nexus between the Yahoo account user and the

residence should counsel against a finding of probable cause in this case ignores the relevant standard. In this regard, as the Government has argued, Defendant proposes several "what-if scenarios." Specifically, Defendant outlines hypotheticals such as: (1) the IP address was not assigned to the Comcast account at the time the Yahoo account user accessed the Internet using the IP address; (2) the Yahoo account user accessed the Internet using the IP address from outside the residence; and (3) the Yahoo account user accessed the Internet using the IP address from inside the residence but never resided there or no longer resided there at the time the warrant was sought. (Docket No. 101 at 7).[3]

Defendant's hypotheticals overlook the evidence cited by Special Agent Smith that connected Defendant to the Yahoo account and that confirmed his residency at 600 3rd Avenue E, Beaver Falls, PA 15010-4836. Specifically, and as outlined above, Special Agent Smith averred that between the time period of March 6, 2012 to June 30, 2012, approximately sixty-seven e-mails were sent between "jesusweptone@gmail.com" and "roblowe6969@yahoo.com." (*600 3rd Avenue E*, No. 2:13-MJ-139-CRE-1, at Docket No. 4 at ¶ 22). In total, approximately 643 images and videos were exchanged between the two users, a majority of which depicted child pornography. (*Id.* at ¶ 26). The IP address for "roblowe6969@yahoo.com" was linked to Comcast, and Comcast identified Defendant, residing at 600 3rd Avenue E, Beaver Falls, PA 15010-4836, as the account holder. (*Id.* at ¶¶ 27-28). In response to a subpoena, Yahoo revealed that the account was created on March 5, 2012 from the same IP address and that recent logins to the account, from September 18, 2012 through October 11, 2012, were also made from the same IP address. (*Id.* at ¶ 29). An inquiry to the United States Postal Service on January 30, 2013, approximately two weeks before Special Agent Smith filed his affidavit, confirmed that

---

[3] In support of his hypothetical scenarios, Defendant quotes text from an article published by The Electronic Frontier Foundation. (*Id.* at 9). The Court will disregard the article because, as stated above, it is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. *Whitner*, 219 F.3d at 295-96.

15

Defendant was receiving mail at 600 3rd Avenue E, Beaver Falls, PA 15010-4836. (*Id.* at ¶ 31). Thus, it was more than reasonable for Special Agent Smith to suspect that the residence would contain evidence of the possession and distribution of material depicting the sexual exploitation of a minor. *See Gates*, 462 U.S. at 238-39.

The averments provided by Special Agent Smith in the affidavit merely help to inform this analysis, and it is plainly appropriate for issuing magistrate judges to consider and rely upon the considerable experience of the affiants in investigating violations of child pornography and the use of computers and electronic devices in the residences of individuals who unlawfully possess and distribute material depicting the sexual exploitation of a minor. It is likewise necessary for this Court to recognize and consider these facts when reviewing the underlying probable cause determination. To this end, the United States Court of Appeals for the Third Circuit and Supreme Court of the United States have cautioned reviewing courts, such as this one, from "overly compartmentalizing the determination of probable cause." *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (internal quotations and alteration omitted). This caution requires the Court "to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002)).

Special Agent Smith's averments in his affidavit provided a reasonable basis upon which Magistrate Judge Eddy could have concluded that the IP address was static from March 2012 through October 2012, which was confirmed by Comcast and Yahoo. (*See 600 3rd Avenue E*, No. 2:13-MJ-139-CRE-1, at Docket No. 4 at ¶ 13 (discussing static and dynamic IP addresses)). The Third Circuit has held that "evidence that the user of a computer employing a particular IP

address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that IP address." *Vosburgh*, 602 F.3d at 526. In concluding that "[t]he unique nature of the IP address assigned to Vosburgh on October 25 made his attempts to access the Link fairly traceable to his Comcast account and the physical address to which that account was registered," the Third Circuit agreed with the Fifth Circuit's finding that "although it was technically possible that the offending emails 'originated outside of the residence to which the IP address was assigned, it remained *likely* that the source of the transmissions was inside that residence.'" *Id.* at 527 (quoting *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (emphasis in original)). Courts outside this Court's jurisdiction have similarly rejected defendants' hypothetical arguments. *See, e.g.*, *United States v. Gillman*, 432 F. App'x 513, 515 (6th Cir. 2011) (rejecting the defendant's argument that "it was possible he used a wireless internet router—something that would have allowed anyone nearby to access the internet and share child pornography through his IP address" because "[that] possibility . . . does not negate the fair probability that child pornography emanating from an IP address will be found on a computer at its registered residential address"); *United States v. Soria*, No. 12-CR-164, 2012 U.S. Dist. LEXIS 161082, at *11 (E.D. Wis. Sept. 25, 2012) ("[W]hile the affidavit does not negate that the suspect computer may have been a laptop outside of the residence as Soria contends, by showing a connection between the IP address and the particular residence, it established a fair probability that the computer was in the residence.").[4]

Moreover, accepting Defendant's hypothetical arguments would essentially require a

---

[4] Defendant's reliance upon *United States v. Stanley*, 753 F.3d 114 (3d Cir. 2014), is misplaced. (Docket No. 101 at 12-13). In *Stanley*, the Third Circuit concluded that an officer's use of a device called the "MoocherHunter" to trace the defendant's wireless signal from a neighbor's unsecured wireless router to its source inside the defendant's home was not a search within the meaning of the Fourth Amendment. *Id.* at 115. While Defendant cites *Stanley* to highlight the commonality of unsecured wireless networks, the Court, as discussed in detail above, must reject Defendant's hypothetical arguments. Furthermore, Defendant has not presented any evidence that: (1) the wireless router was unsecured; (2) someone accessed the wireless router; or (3) Special Agent Smith was aware that the wireless router was unsecured or that someone accessed it.

finding of direct evidence by Special Agent Smith that he knew that Defendant possessed child pornography. But, the same is simply not required. *See United States v. Pearson*, 181 F. App'x 192, 195 (3d Cir. 2006) (citing *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) ("[D]irect evidence of a crime is not required for the issuance of a search warrant.")); *see also Aguilar v. Texas*, 378 U.S. 108, 114 (1964) (explaining that an affidavit "need not reflect the direct personal observations of the affiant"). A warrant is sufficient so long as the "veracity" and "basis of knowledge" of the persons providing the information is sufficient to "provide a fair probability, under the totality of the circumstances, that evidence of criminal activity will be discovered in a certain place." *Pearson*, 181 F. App'x at 195. Thus, Special Agent Smith's averments in his affidavit provided a reasonable basis upon which Magistrate Eddy could have concluded that contraband or evidence of a crime would be found at 600 3rd Avenue E, Beaver Falls, PA 15010-4836. Accordingly, Defendant having failed to establish that the search warrant was not supported by probable cause, the Court will deny Defendant's Motion to Suppress.

    4.    <u>Good Faith Exception</u>

The Government has also advanced the alternative theory that the "good faith exception" should save the evidence from exclusion at trial, in the event that a Fourth Amendment violation is found by the Court. (Docket No. 102 at 10-12). Defendant suggests that the good faith exception should not apply because the warrant application was not founded on probable cause. (Docket Nos. 87 at 8, 101 at 20-23). The Court once again agrees with the Government's position and alternatively holds that if the warrant application were deemed unconstitutional, there is no basis for a finding that Magistrate Judge Eddy's belief that probable cause existed was deliberate, reckless, or grossly negligent.

The Supreme Court has held that evidence derived from a warrant not supported by

probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule—to deter police misconduct—would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919-20).

The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922. Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307-308 (citing *Leon*, 468 U.S. at 922 n.23). The Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Tracey*, 597 F.3d at 151. These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.'" *Id.* (quoting *Herring v. United States*, 55 U.S. 135, 144 (2009)).

Here, Defendant relies upon the second and third prongs of this test and challenges the underlying probable cause determination. (Docket No. 101 at 21-22). Given the Court's findings set forth above, the warrant application set forth sufficient indicia of criminal activity permitting the search of 600 3rd Avenue E, Beaver Falls, PA 15010-4836 to uphold the

magistrate judge's probable cause determination. In addition, Defendant has not introduced any evidence in an effort to undermine the reliability of the information in the warrant application. Given same, the Court finds that none of the necessary factors are present which would preclude the Government's invocation of the good faith exception. Accordingly, Defendant's Motion to Suppress must be denied on this alternative basis as well.

IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress [87] is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: December 1, 2016

cc/ecf: All counsel of record